UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WESLEY COOPER, #1455961

    Petitioner,

v.                                    Action No. 2:18cv464

HAROLD CLARKE,

    Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is before the Court on Wesley Cooper's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the motion to dismiss filed by respondent Harold W. Clarke, Director of the Virginia Department of Corrections ("respondent"). This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Local Rules of the United States District Court for the Eastern District of Virginia. For the following reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 7, be **GRANTED**, and the petition for a writ of habeas corpus, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE.**

### I.    STATEMENT OF THE CASE

The habeas petition in this matter asserts that Cooper is entitled to relief on four grounds related to the sufficiency of the evidence to convict him for felon in possession of a firearm, ineffective assistance of trial counsel for failure to challenge the sufficiency of that evidence, ineffective assistance of appellate counsel that led to a procedural default, and improper sentencing for his convictions for use of a firearm in the commission of a felony, second or subsequent

offense. ECF No. 1 at 17. Cooper is currently serving a 28-year active sentence in the Virginia Department of Corrections, after being sentenced by the Circuit Court of the City of Chesapeake on April 11, 2014. ECF No. 1 at 1; Cir. R. 107–11.[1] The facts relevant to his habeas petition are recounted below.

### A. Cooper was convicted of multiple crimes arising from the same robbery, including use of a firearm in the commission of a felony, and use of a firearm in the commission of a felony, subsequent offense.

At a bench trial on May 31, 2013, a judge in the Circuit Court of the City of Chesapeake found Cooper guilty of twelve offenses committed at the home of Shawn Roberts ("Roberts") against Roberts and his companion, Donna Teller ("Teller"), in the early morning of September 23, 2012. May Tr. 13 (waive jury trial), Oct. Tr. 158–59 (finding of guilt).

Roberts testified that he returned home from a trip to a convenience store at approximately 3:20 a.m. with Teller, and found that his door was kicked in, and there were "two men in [his] kitchen with shotguns." May Tr. 23–25. He stated that the men were "all dressed in black with ski masks on" that covered their heads and faces, and they were also wearing gloves. *Id.* at 25–26. He stated that he saw shotguns in their hands, and affirmed that he was "familiar with firearms [so] that [he] kn[e]w that they were shotguns." *Id.* at 26. The men tied up Roberts and Teller, and took property from them at gunpoint, including their cell phones, wallets, identification cards, credit cards, a Social Security card, a video game system, a Chartway ATM card, and $2,000.00. *Id.* at 27, 34–36. He stated that the men were white, because he saw the skin around the eyes in

---

[1] "Cir R." refers to the paper record in *Commonwealth v. Cooper*, CR13-226-00 through -11, received from the Circuit Court of the City of Chesapeake under cover letter dated June 12, 2019, and consecutively paginated from 1 through 175. Under the same cover letter, the circuit court provided transcripts of the trial on May 31, 2013, the trial on October 4, 2013, and the sentencing hearing on April 11, 2014. Those transcripts are referred to herein as "May Tr.," "Oct. Tr.," and "Apr. Tr."

2

their masks. *Id.* at 33. Teller's testimony was substantially similar, although she did not recognize the type of guns the men were holding, except that the gun "pointed at [her] head . . . [was] a large gun." *Id.* at 59–62, 83.

Officer Marcus Johnson, of the Virginia Beach police department, testified that he arrested Cooper near a Chartway ATM in Virginia Beach at 4:23 a.m. on September 23, 2012. *Id.* at 105–08. He was performing a uniform patrol, and saw a white male, later determined to be Cooper, standing in the drive-through of a Chartway Bank "manipulating with the ATM," wearing all dark clothing, a hoodie over his head, and a mask covering the lower part of his face. *Id.* at 108, 111. Cooper fled on foot, despite multiple commands from Officer Johnson to stop, and Officer Johnson eventually used his Taser to bring Cooper to the ground after Cooper made repeated hand movements toward his waistband. *Id.* at 108–10. Officer Johnson recovered from Cooper a receipt showing that he tried to use an ATM card at the Chartway ATM, but the PIN failed. *Id.* at 121. He also recovered from Cooper the identification and other cards taken from Roberts. *Id.* at 125–28. It was stipulated that it would take between 17.5 and 25 minutes to travel from the scene of the robbery to the Chartway ATM. *Id.* at 149–50. The Commonwealth rested, and the trial was continued. *Id.* at 160.

The trial resumed on October 4, 2013, and the defense presented witnesses without moving to strike. Oct. Tr. 3–4. Leah Guagenti (Guagenti), Cooper's girlfriend and mother of his infant son, testified that, on the night of the robbery, she was with Cooper at a gathering in the Aragona neighborhood of Virginia Beach from 8:00 p.m. until 3:15 or 3:30 a.m. *Id.* at 5, 11–12. She stated that she was not apart from Cooper for more than 15 minutes at a time that night, and that he was with other individuals in the garage of the residence practicing tattoos. *Id.* at 16, 20–21. Christina Luhm, Cooper's friend, similarly testified that she saw Cooper at the gathering in Aragona from

3

the time she arrived, at approximately 9:45 p.m., until she left at approximately 3:20 a.m. *Id.* at 31–32, 35, 43.

Cooper testified that he was at the house in Aragona practicing tattoos on the night of the robbery, and left to go to a convenience store for cigarettes after Guagenti left. *Id.* at 65, 68. He stated that "[t]here were some [bank and ID] cards splattered on the side of the road," so he picked them up, and "[k]nowing it was wrong, [he] decided to go try to get money out of the [Chartway] ATM machine . . . with the card." *Id.* at 68–69, 71. The trial judge commented, "That doesn't make sense. . . . So if you knew it was wrong, then why did you do it?" *Id.* at 70. Cooper responded that he had thought about that while awaiting trial for a year and he regretted his actions. *Id.* He explained that he put on a mask he used for riding his motorcycle before going to the Chartway ATM, because he "knew there were cameras at the ATM" and he "knew [he] was doing the wrong thing by trying to use the cards." *Id.* at 73–75. He further stated that he was intoxicated when he went to the outside ATM and attempted to use the card, which is when the police car pulled into the bank lot. *Id.* at 76. Cooper tried to run from the police before he was tased. *Id.* He acknowledged that the face mask and gloves recovered from his person and admitted into evidence belonged to him. *Id.* at 106–07.

The defense rested, and argued in closing that there was no evidence to identify Cooper as one of the robbers, and there was evidence to explain his possession of the stolen ID and ATM cards shortly after the robbery. *Id.* at 121, 129–32. The trial judge questioned why Cooper needed to withdraw money from the ATM after stating that he was walking to the convenience store to bum cigarettes from a friend, and defense counsel acknowledged that Cooper intended to steal whatever money he could access with the ATM card. *Id.* at 136. The Commonwealth argued that it was not plausible that, after the armed robbery in Chesapeake, the robbers drove 17 to 25 minutes

4

to Virginia Beach and left part of the stolen property by the road, where Cooper happened to find it within an hour of the robbery. *Id.* at 141–43.

The court found Cooper guilty of all charges: burglary, two counts of robbery of a residence, two counts of abduction, one count of wearing a mask, one count of possession of a firearm by a convicted felon, and five counts of use of a firearm in the commission of a felony.[2] *Id.* at 158–59. One of those charges had been amended to use of a firearm in the commission of a felony, first offense, and the remaining four charges were for use of a firearm in the commission of a felony, subsequent offense. *Id.* at 159.

The court sentenced Cooper during a hearing on April 11, 2014. Apr. Tr. 49–52. Cooper, through counsel, argued that the court had discretion to run the sentences for his firearms offenses concurrently with the sentences for his other offenses, except that those sentences had to be consecutive to the sentence for the underlying felony in which the firearm was used. *Id.* at 10–13. The defense argument acknowledged that the mandatory minimum sentence for the first use of a firearm offense was three years, and five years for the other offenses. *Id.* at 11. After additional argument and testimony from Guagenti, Cooper made a statement to the court, including that he

---

[2] Virginia Code § 18.2-308.2 proscribes the possession of a firearm by a convicted felon. "[I]n order to sustain a conviction for possessing a firearm in violation of Code § 18.2-308.2, the evidence need show only that a person subject to the provisions of that statute possessed an instrument which was designed, made, and intended to expel a projectile by means of an explosion. It is not necessary that the Commonwealth prove the instrument was 'operable,' 'capable' of being fired, or had the 'actual capacity to do serious harm.'" *Armstrong v. Commonwealth*, 562 S.E.2d 139, 145 (Va. 2002). In contrast, Va. Code § 18.2-53.1 proscribes the use of a firearm in the commission of a felony, and to secure a conviction under that statute, "the Commonwealth must prove either (1) the defendant possessed an actual firearm; that is, an instrument designed, made, and intended to expel a projectile by means of an explosion, regardless of operability; or (2) that the defendant possessed an object that was not an actual firearm but that gave the appearance of being one. Finally, the Commonwealth may prove either (1) or (2) by direct evidence, circumstantial evidence, or both." *Barney v. Commonwealth*, 822 S.E.2d 368, 373 (Va. App. 2019) (citations omitted).

"apologize[d] to the victims for the consequences of [his] criminal actions. [He knew] that they have suffered, and [he is] sorry for what [he] did." *Id.* at 47.

In addition to fines and restitution, the court imposed 45 years of imprisonment for the non-firearms offenses, and suspended all 45 years. *Id.* at 49–51. The court also imposed an active sentence of 28 years of imprisonment for the firearms offenses, including consecutive sentences of five years for possession of a firearm by a convicted felon, three years for first-offense use of a firearm in the commission of a felony, and five years for each of the four counts of use of a firearm in the commission of a felony, second or subsequent offense. *Id.* at 51–52.

### B. The Court of Appeals of Virginia and the Supreme Court of Virginia refused Cooper's direct appeal of his conviction for possession of a firearm by a felon because his assignment of error was barred by state court rules.

On May 1, 2014, Cooper, through appointed counsel, Robert L. Wegman, Esquire, filed a notice of appeal with the Court of Appeals of Virginia. CAV R. 1–2.[3] The sole assignment of error alleged in the petition for appeal was that the court "erred by not dismissing the possession of firearm by convicted felon charge, because the evidence failed to prove that the firearm was capable of expelling a projectile by explosive force," as required for a conviction under Va. Code Ann. § 18.2-308.2. CAV Pet. 7, 9. Cooper only challenged the conviction for possession of a firearm by a convicted felon, and stated that he did "not take issue with the use of a firearm charges, because there the standard is different." *Id.* at 9.

On December 30, 2014, the Court of Appeals denied Cooper's petition for appeal, because his assignment of error was barred by the contemporaneous objection rule, Rule 5A:18, and there

---

[3] "CAV R." refers to the paper record in *Cooper v. Commonwealth*, Record No. 0803-14-1, received from the Court of Appeals of Virginia, and consecutively paginated from 1 through 16. Cooper's petition ("CAV Pet.") and the Commonwealth's brief in opposition ("CAV Br. Opp.") were received under the same cover index, but they are not included in the consecutive page numbering. Citations to these pleadings use the original pagination.

6

was no reason to apply either the good cause or ends of justice exception to that rule to permit review. CAV R. 5–6. Cooper's request for review by a three-judge panel was denied by order dated April 9, 2015. *Id.* at 12.

On May 8, 2015, Cooper, by counsel, filed a petition for appeal in the Supreme Court of Virginia. SCV R. 1.[4] The sole assignment of error was that the Court of Appeals erred by not granting Cooper's appeal under Rule 5A:18, because Cooper had shown that a miscarriage of justice occurred. *Id.* at 9, 13–14. The Supreme Court of Virginia refused the appeal by order dated December 17, 2015. *Id.* at 28.

### C. The state circuit court denied Cooper's habeas corpus petition, and the Supreme Court of Virginia dismissed and refused Cooper's habeas appeal because it did not comply with Virginia Rule 5:17.

On December 5, 2016, Cooper filed a *pro se* petition for a writ of habeas corpus in the Circuit Court of the City of Chesapeake. Habeas Cir. R. 1.[5] He asserted seven grounds in support of habeas relief, including bias by the trial court, insufficient evidence, plain error and abuse of discretion in sentencing, and four grounds for ineffective assistance of his trial and appellate counsel. *Id.* at 3–16. On June 1, 2017, the circuit court entered an order dismissing Cooper's habeas petition. *Id.* at 40, 48.

---

[4] "SCV R." refers to the paper record received from the Supreme Court of Virginia under a certificate dated June 6, 2019, and consecutively paginated from 1 through 47. This record contains both Cooper's direct appeal, *Cooper v. Commonwealth*, Record No. 150679, on pages 1 through 28, and the appeal of his habeas matter, *Cooper v. Clarke*, Record No. 171167, on pages 29 through 47.

[5] "Habeas Cir. R." refers to the paper record from the circuit court in *Cooper v. Clarke*, Case No. CL16-3005, which is consecutively paginated from 1 through 56.

Cooper certified that he placed his notice of appeal to the Supreme Court of Virginia in the prison mailing system on June 12, 2017.[6] SCV R. 29. He filed his petition for appeal on August 29, 2017. *Id.* at 31. He listed seven assignments of error that were effectively identical to the grounds advanced in his habeas petition in the circuit court, and for each assignment of error, stated that he "reasserts the argument advanced in the petition for habeas corpus submitted to" the circuit court. *Id.* at 31–33.

On March 13, 2018, the Supreme Court of Virginia entered an order disposing of Cooper's habeas appeal. *Id.* at 36. It dismissed the petition for appeal regarding two assignments of error as insufficient under Rule 5:17(c)(1)(iii) of the Rules of the Supreme Court of Virginia, because they did not address the ruling of the circuit court in the case from which an appeal was sought. *Id.* The court refused the petition for appeal regarding the remaining five assignments of error, because Cooper failed to include principles of law and authorities with respect to those assignments of error as required by Rule 5:17(c)(6). *Id.*

On June 28, 2018, the Supreme Court of Virginia entered an order denying Cooper's petition for rehearing. *Id.* at 47.

### D. Cooper's Habeas Corpus Proceedings in this Court

Cooper signed the pending federal petition on August 3, 2018, and certified that he placed it in the prison mailing system on the same date.[7] ECF No. 1 at 14. This Court granted him leave to file an addendum to his petition on December 4, 2018. ECF Nos. 3–4.

---

[6] The notice is stamped by the clerk of the Supreme Court of Virginia on June 21, 2017. SCV R. 29.

[7] Applying the prison mailbox rule, *see Houston v. Lack*, 487 U.S. 266, 270 (1988), August 3 is the filing date, even though the petition was marked filed in this Court on August 27, 2018. A letter from Cooper to the Clerk of this Court concerning payment of the filing fee is dated August

8

Cooper asserts four grounds in his petition: (1) insufficient evidence that the alleged gun was able to expel a projectile by force of an explosion to satisfy the definition of a firearm under Virginia Code § 18.2-308.2 and convict him for felon in possession of a firearm; (2) ineffective assistance of counsel for failing to object or move to strike the felon in possession of a firearm charge; (3) ineffective assistance of appellate counsel resulting in a procedural default; and (4) a "fundamental miscarriage of justice" for multiple use of a firearm convictions arising from the same event. ECF No. 1 at 17, 19–21. Specifically, regarding ground four, he claims that he should not have received longer sentences for the four "second or subsequent" use of a firearm convictions, because the "event giving rise to these convictions transpired at one time and [he] was convicted of all offenses simultaneously."[8] *Id.* at 31.

Cooper further argues in his petition and addendum that the claims presented in his petition were procedurally defaulted in state court, but those defaults were excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Coleman v. Thompson*, 501 U.S. 722 (1991). *Id.* at 16; ECF No. 3 at 2–3. He claimed that ineffective assistance of counsel at a stage in the proceedings when he was entitled to effective assistance constitutes "cause" for the procedural default rule under *Coleman*. ECF No. 3 at 3. He also asserts that the miscarriage of justice exception applies, meaning that a constitutional violation probably resulted in the conviction of an actually innocent person, because

---

3, 2018, and the envelope reflects that his petition was mailed from prison on August 7, 2018. ECF Nos. 1-2, 1-3.

[8] Cooper's argument in support of ground four ignores precedent from the Supreme Court of Virginia upholding "second or subsequent" convictions for use of a firearm in the commission of a felony when the charges all arise from a single transaction and the convictions were rendered in the same trial. *See, e.g., Winston v. Commonwealth*, 604 S.E.2d 21, 45 (Va. 2004) (rejecting the argument that a jury had to determine the chronological order of the offenses to apply enhanced sentences for "second or subsequent" offenses under Va. Code Ann. § 18.2-53.1, and noting that the Court had previously "held that a defendant could be convicted and sentenced for more than one charge under Code § 18.2–53.1 even though the charges arose from a single incident").

9

his trial counsel did not object to the prosecutor's closing argument that the possession of a firearm charge was proven, and the prosecutor's argument shifted the burden of proof to the defendant when the record did not show the charge was proven beyond a reasonable doubt. *Id.* Accordingly, he argues that his ineffective assistance of counsel claim, "including but not limited to the now mentioned (burden shifting) issue," falls within the procedural default exception in *Martinez*, because his trial counsel was ineffective and caused default of this issue by failing to raise the burden-shifting issue at trial. *Id.* at 4. Finally, he claimed that "[s]tructural error, referring to a very narrow class of cases[,] requires 'reversal' despite any applicable procedural bar." *Id.* at 5.

On December 21, 2018, respondent filed an answer to the petition and addendum pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and a motion to dismiss the petition and addendum, along with a supporting memorandum.[9] ECF Nos. 7–9. Respondent asserts that the claims in Cooper's petition are simultaneously exhausted and defaulted for purposes of federal habeas review, because Cooper has not properly presented the claims to the Supreme Court of Virginia and would now be precluded from presenting the claims. ECF No. 9 at 2, 8. Respondent asserts that Cooper's petition is barred by the statute of limitations. *Id.* at 3.

On January 18, 2019, Cooper filed a response to the motion to dismiss, entitled a "traverse." ECF No. 11. He mostly repeats his arguments concerning grounds one and four, and asserts that grounds two and three were not defaulted. *Id.*

---

[9] The motion to dismiss included a separately filed notice, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), providing Cooper with notice of how to timely respond thereto and the potential consequences for failing to do so. ECF No. 10.

## II. ANALYSIS

**A.    Cooper's federal habeas petition is barred by the statute of limitations.**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d), a one-year statute of limitations applies to federal habeas petitions brought by state prisoners:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> . . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)(A), (d)(2).

Cooper's conviction became final on March 17, 2016, when he did not file a petition for a writ of certiorari to the Supreme Court of the United States within 90 days of the December 17, 2015 order denying his petition for appeal to the Supreme Court of Virginia. Sup. Ct. R. 13(1); *Wall v. Kholi*, 562 U.S. 545, 548 (2011) (noting that a "conviction became final on direct review when [a habeas petitioner's] time expired for filing a petition for a writ of certiorari in this Court"). This date is not within one year of Cooper's filing his federal habeas petition on August 3, 2018. This Court must determine whether the one-year limitations period was tolled during Cooper's state habeas proceeding.

The tolling provision in 28 U.S.C. § 2244(d)(2) applies during the pendency of a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." "Properly filed" means that the petitioner complied with state filing

11

conditions, such as time limits to file the collateral review matter. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (explaining that an "application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," which "usually prescribe . . . the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee").

Cooper's initial state habeas petition was properly filed for tolling purposes. When Cooper filed his habeas petition with the circuit court on December 5, 2016, 263 days had elapsed since his conviction became final on March 17, 2016. The period when his habeas case was pending in the circuit court, from December 5, 2016, through June 1, 2017, tolled the running of the statute of limitations. 28 U.S.C. § 2244(d)(2). He therefore had 102 days remaining to file his federal habeas petition, absent additional tolling for a properly-filed state habeas appeal. As discussed below, however, his state habeas appeal was not properly filed and did not toll the statute of limitations because he did not comply with Rule 5:17 of the Rules of the Supreme Court of Virginia.

Rule 5:17 governs the filing of a petition for appeal. Section (c) of Rule 5:17 states that a "petition for appeal must contain the following" categories of information, including assignments of error addressed to the ruling at issue and supporting authorities and argument:

> (iii) Insufficient Assignments of Error. An assignment of error that does not address the findings, rulings, or failures to rule on issues in the trial court or other tribunal from which an appeal is taken, or which merely states that the judgment or award is contrary to the law and the evidence, is not sufficient. An assignment of error in an appeal from the Court of Appeals to the Supreme Court which recites that "the trial court erred" and specifies the errors in the trial court, will be sufficient so long as the Court of Appeals ruled upon the specific merits of the alleged trial court error and the error assigned in this Court is identical to that assigned in the Court of Appeals. If the assignments of error are insufficient, the petition for appeal shall be dismissed.

Va. S. Ct. R. 5:17(c), (c)(1)(iii).

12

Rule 5:17(c) further provides:

(6) *Authorities and Argument.* With respect to each assignment of error, the standard of review and the argument—including principles of law and the authorities—shall be stated in one place and not scattered through the petition. At the option of counsel, the argument may be preceded by a short summary.

Va. S. Ct. R. 5:17(c)(6).

The Supreme Court of Virginia has explained that "the inclusion of sufficient assignments of error is a mandatory procedural requirement and that the failure to comply with this requirement deprives this Court of its active jurisdiction to consider the appeal." *Davis v. Commonwealth*, 717 S.E.2d 796, 796–97 (Va. 2011) (dismissing an appeal when the petitioner only assigned error to the trial court's ruling and not to the holding of the Court of Appeals of Virginia). The Supreme Court of Virginia has also held that an appellant waives certain assignments of error by failing to provide supporting authorities and argument. *See, e.g.*, *Winston v. Commonwealth*, 604 S.E.2d 21, 29, 35, 38 (Va. 2004).

The Fourth Circuit has determined that a habeas appeal petition refused by the Supreme Court of Virginia for failure to comply with Rule 5:17 is not properly filed for tolling purposes. *Escalante v. Watson*, 488 F. App'x 694, 701 (4th Cir. 2012). In that case, Escalante, acting *pro se*, appealed the denial of his state habeas petition to the Supreme Court of Virginia, which refused his petition "on the grounds that the petition 'was not perfected in the manner provided by law' and thus not properly filed because the appeal 'does not list the specific errors in the lower court proceedings,' pursuant to Rule 5:17(c)." *Id.* at 695–96.

The Fourth Circuit affirmed the district court's ruling that Escalante's federal habeas petition was untimely under 28 U.S.C. § 2241(d)(1) because his state habeas appeal was not properly filed and did not toll the AEDPA statute of limitations. *Id.* at 696–97. The court observed that a "petition for appeal that does not contain the appropriate assignments of errors required by

Va. Sup. Ct. R. 5:17(c) 'does not meet the required form of the petition for appeal,' and thus does not qualify for statutory tolling." *Id.* at 698 (quoting *Christian v. Baskerville*, 232 F. Supp. 2d 605, 607 (E.D. Va. 2001), *cert. of appealability denied,* 47 F. App'x 200 (4th Cir. 2001)). The court explained that "where the petition for appeal fails to assign any error in compliance with Va. Sup. Ct. R. 5:17(c), it compels the dismissal of the appeal in its entirety," and the "Virginia Supreme Court's conclusion that these claims were defaulted bars them from our consideration, absent cause and prejudice or a miscarriage of justice, so long as Rule 5:17(c) is an independent and adequate state grounds for decision." *Id.* at 699 (quotation marks and citation omitted). The court further noted that there "is no dispute that the Supreme Court of Virginia's dismissal of Escalante's state habeas application was based exclusively on [Rule] 5:17, which sets forth a state rule acknowledged to be an adequate and independent state law ground for decision," and that Rule 5:17 is a firmly established and regularly applied state rule. *Id.*

Here, Cooper's habeas appeal was dismissed and refused by the Supreme Court of Virginia for his failure to comply with Rule 5:17. He filed a habeas petition with the Circuit Court for the City of Chesapeake on December 5, 2016, which that court dismissed on June 1, 2017. Habeas Cir. R. 1, 40, 48. Cooper certified that, on June 12, 2017, he placed the appeal of his habeas matter to the Supreme Court of Virginia in the prison mailing system.[10] SCV R. 29. That court dismissed and refused his appeal on March 13, 2018, because two of his assignments of error were not directed to the ruling he was appealing as required by Rule 5:17(c)(1)(iii), and because the

---

[10] The AEDPA statute of limitations analysis here would not change if the Court used June 21, 2017, the date the Supreme Court of Virginia marked the appeal as filed. SCV R. 29; *see Houston*, 487 U.S. at 266, 270 (concluding that a prisoner filed his notice of appeal of his habeas case within the 30-day period proscribed in Rule 4 of the Federal Rules of Appellate Procedure, when he delivered the notice to prison authorities for filing three days before the deadline expired, and the notice was stamped "filed" by the district court one day after the deadline expired).

14

remaining assignments of error failed to include principles of law and authorities as required by Rule 5:17(c)(6). *Id.* at 36. The Supreme Court of Virginia denied Cooper's petition for rehearing on June 28, 2018. *Id.* at 47. None of Cooper's assignments of error complied with Rule 5:17(c), so his habeas appeal did not toll the AEDPA statute of limitations. *See Escalante*, 488 F. App'x at 698–701; *Harris v. Clarke*, No. 1:14cv67, 2015 WL 1275390, at *2–3 (E.D. Va. 2015) (concluding that a habeas appeal that was dismissed under Rule 5:17 was not properly filed and so did not toll the AEDPA limitations period).

As noted above, Cooper had 102 days remaining in his AEDPA statute of limitations when the circuit court dismissed his habeas petition on June 1, 2017. However, between that date and the placing of the habeas petition to this Court in the prison mailing system on August 3, 2018, 428 additional days elapsed. The habeas appeal filed during that time did not toll the statute of limitations. Accordingly, Cooper filed his federal petition 326 days beyond the AEDPA statute of limitations. Cooper's habeas petition should therefore be dismissed as time-barred.[11]

**B.    Cooper has not established that equitable tolling should apply for either an extraordinary circumstance or due to a miscarriage of justice.**

Cooper has not asserted that equitable tolling is warranted in his case, and cause does not exist to consider his claims after the Supreme Court of Virginia's dismissal and refusal of his habeas appeal. *See Escalante*, 488 F. App'x at 699 (noting that the "Virginia Supreme Court's

---

[11] Cooper had an opportunity to respond to the respondent's argument that his petition was time-barred because his habeas appeal was not properly filed and did not toll the AEDPA statute of limitations, and Cooper responded by arguing that there was not a consistently-applied adequate and independent state law ground to justify a state-law procedural default. ECF No. 9 at 3; ECF No. 11 at 3–5. Thus, consistent with the Fourth Circuit's comments in *Escalante*, Cooper was afforded the opportunity to respond to the timeliness argument. *Escalante*, 488 F. App'x at 700–01 (noting that Escalante had an opportunity to submit evidence after the court raised the timeliness issue *sua sponte*, which comported with the Fourth Circuit's prior standard in *Hill v. Braxton*, 277 F.3d 701, 705 (4th Cir. 2002), that a *pro se* habeas petitioner "be given an opportunity to provide a basis, if any, to show that the petition was filed within the time limitation period").

15

conclusion that these claims were defaulted bars them from our consideration, absent cause and prejudice or a miscarriage of justice"). Equitable tolling of the one-year AEDPA statute of limitations is available to a habeas petitioner "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 645, 649 (2010) (quotation marks and citation omitted).

However, mindful that a court must liberally construe *pro se* filings in habeas matters, *Riggleman v. W. Va. Dept. of Corr.*, 174 F. App'x 168, 169 (4th Cir. 2006), this Court interprets Cooper's claim of a "miscarriage of justice" as a claim of actual innocence, because such a claim, if established, could satisfy the requirements for equitable tolling. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, . . . or, as in this case, expiration of the statute of limitations."); *Harris*, 2015 WL 1275390 at *4–5 (analyzing a petitioner's actual innocence claim to determine whether to reach the merits of a federal habeas petition that was untimely, because the petitioner's state habeas appeal was not properly filed under Rule 5:17(c)).[12]

---

[12] Even construing Cooper's claims liberally, however, *Martinez* and *Coleman* do not apply to Cooper's situation, because there was not a procedural default in the initial-review collateral proceeding caused by attorney errors or the absence of an attorney. *Martinez*, 566 U.S. at 14 (noting that a habeas petitioner may establish cause for a procedural default in an initial-review collateral proceeding if he had no counsel at that stage or if his counsel was ineffective at that stage). As noted above, Cooper's initial review in his state habeas proceeding was proper, and the problems occurred in the appeal of his state habeas case. *Martinez*, however, does not apply to state habeas appeals. *See, e.g., Martinez*, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts."); *Mills v. Pearson*, No. 1:13cv317, 2014 WL 559675, at *2–3 (E.D. Va. Feb. 12, 2014) (concluding that *Martinez* did not apply to excuse a habeas petitioner's

16

In his "traverse," Cooper asserts that he can overcome a state default by establishing "cause and prejudice or a fundamental miscarriage of justice," and that his habeas claims "fall squarely within" this exception. ECF No. 11 at 3–4. Accordingly, the Court considers whether any of his habeas grounds establish a miscarriage of justice or actual innocence claim that would justify equitable tolling and allow his claim to proceed, notwithstanding the failure to file within the one-year AEDPA deadline.

As the Supreme Court explained,

> a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief. "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."

*McQuiggin*, 569 U.S. at 392 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

"To invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). "A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime." *Id.* at 340. "Thus, a petitioner must do more than simply show that

---

procedural default, which was caused by his failure to timely appeal the dismissal of his initial state habeas petition).

17

the evidence used to convict him was legally insufficient—he must present new evidence tending to show that he is factually innocent of his crime." *Harris*, 2015 WL 1275390, at *5. Arguing that "the evidence presented at trial was insufficient to prove all statutory elements" does not satisfy the actual innocence standard. *Id.*

Here, Cooper has not asserted any new evidence, whether physical or testimonial. Instead, his only assertions concern the legal sufficiency of the evidence supporting his conviction and whether the possession of a firearm charge was proven beyond a reasonable doubt. ECF No. 11 at 2–5. As in *Harris*, arguing that the evidence was insufficient to prove all of the statutory elements of the felon in possession of a firearm charge does not constitute a claim of actual, factual innocence.

In addition, the evidence at trial was similar to evidence that has been held sufficient to affirm a conviction for felon in possession of a firearm, without other evidence regarding the object's ability to expel a projectile. For example, in *Jordan v. Commonwealth*, the Supreme Court of Virginia affirmed Jordan's conviction for felon in possession of a firearm under Va. Code § 18.2-308.2, based on the testimony of a 13-year-old victim. *Jordan v. Commonwealth*, 747 S.E.2d 799, 800 (Va. 2013). The victim testified that he was "familiar with handguns because his father was in the military," and identified the small silver pistol pointed at him as a "Raven." *Id.* The court upheld the conviction based on the victim's identification of the object, and also noted that "the acts of pointing the gun at [the victim] while directing him to get out of the car, most assuredly communicated the message that if [the victim] did not comply, Jordan would shoot him." *Id.* at 801.

Likewise, here, Roberts testified that he saw the robbers with shotguns in their hands, and stated that he was "familiar with firearms [so] that [he] kn[e]w that they were shotguns." May Tr.

18

at 26. Roberts identified the particular style of weapon based on his familiarity with firearms, and the robbers' actions of pointing the guns at Roberts and Teller at close range communicated that they would be shot if they did not comply. In light of this evidence and the holding in *Jordan*, as well as Cooper's failure to identify any new reliable evidence, the Court cannot conclude that Cooper has shown that it is more likely than not that no reasonable juror would have convicted him of being a felon in possession of a firearm. *See McQuiggin*, 569 U.S. at 386.

Thus, Cooper's claims of "legal" innocence are insufficient to invoke the miscarriage of justice exception to the AEDPA statute of limitations. Accordingly, equitable tolling does not apply, and Cooper's habeas petition should be dismissed as untimely.

### III. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 7, be **GRANTED**, and the petition for a writ of habeas corpus, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

### IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

          /s/
Robert J. Krask
United States Magistrate Judge

Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
July 10, 2019